IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA ARROYO, | ) |
|         Plaintiff, | ) |
| v. | ) No. 12 C 4072 |
| CAROLYN W. COLVIN, acting commissioner of Social Security,[1] | ) Magistrate Judge Maria Valdez |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria Arroyo ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment [Doc. No. 23] and grants the Commissioner's Cross-Motion for Summary Judgment [Doc. No. 26].

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff suffered from two strokes in 2000 and claims that she is functionally limited due to the residual effects of those strokes. Despite those limitations, however, Plaintiff was able to continue working as a factory assembly worker until 2009, when she was laid off. Plaintiff then filed an application for SSDI benefits on August 26, 2009, alleging a disability onset date of February 5, 2009. Her application was denied initially and upon reconsideration. Accordingly, she requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Plaintiff was not disabled at Step Four of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from the following severe impairments: post-stroke and left-lower-extremity weakness; obesity; mild degenerative disease in the left knee; mild degenerative disease in the lumbar spine; and a need for blood coagulation therapy. (R. 22.) After determining that Plaintiff did not meet any listed impairment, the ALJ calculated Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff could perform light sedentary work. Specifically, the ALJ found that Plaintiff can stand and walk no more than two hours in an eight-hour day, lift and carry no more than ten pounds occasionally and five pounds frequently, and perform postural movements such as stooping, crouching, and kneeling no more than occasionally. (R. 23.) In addition, the ALJ determined that Plaintiff cannot work with knives or in other situations where

being cut is likely (due to her blood clotting issues) and that she is unable to maintain the attention or concentration necessary to perform complex tasks (due to her alleged pain).

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of his RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff is able to perform her past relevant work as a factory assembly worker, and, furthermore, that she can work other jobs that exist in significant numbers in the national economy. (R. 28.) Accordingly, the ALJ determined that Plaintiff is not disabled under the Social Security Act.

## STANDARD OF REVIEW

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform

her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail

and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

On appeal, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ disregarded medical evidence that supports a lower RFC determination; (2) the ALJ improperly discounted the opinion of Plaintiff's treating physicians; (3) the ALJ improperly determined that Plaintiff's claims of pain were not credible; (4) the hearing was deficient because there was not a consultative examiner present; (5) the VE used a flawed hypothetical that failed to account for Plaintiff's impairments; and (6) the VE failed to establish the existence of other jobs in the national economy that Plaintiff could perform. The Court addresses each issue in turn.[2]

---

[2] The Court notes that Plaintiff generally fails to cite to the record in support of her arguments. Moreover, Plaintiff's briefs lack a clearly defined structure and scope with respect to the issues on appeal. Nonetheless, the Court will construe and support Plaintiff's claims to best possible extent, consistent with the record and the law.

5

## A. The ALJ's Step Four Determinations

### 1. *The ALJ Did Not Disregard Substantial Medical Evidence*

Plaintiff first argues that the ALJ disregarded medical signs and evidence that indicate she is further functionally limited than the ALJ found her to be. In particular, Plaintiff claims that the ALJ did not evaluate the opinions of four physicians: Dr. Procento (Plaintiff's primary physician); Dr. Castle (a neurologist); Dr. Saikh (a physical therapist); and Dr. Cavanaugh (a rehabilitation specialist) — all of whom allegedly noticed that Plaintiff suffered from a limp and foot drop and that she required a cane and leg brace to walk. Thus, according to Plaintiff, the ALJ ignored medical evidence of Plaintiff's limp, foot drop, and need for a cane and leg brace, which resulted in a flawed RFC determination. (*Id.* at 8-9.)

The Court finds no support for Plaintiff's argument in the record. The ALJ was clearly aware that Plaintiff needed a cane and leg brace. (*See, e.g.,* R. 25-26.) Moreover, in arriving at his RFC determination, the ALJ explicitly considered Dr. Procento's observation that Plaintiff suffers from "weakness in her left foot while walking and a limp in her gait," as well as Dr. Castle's observation that "her gait was notable for foot drag . . . and a limp that appeared to affect her posture." (R. 24.) Therefore, Plaintiff's contention that the ALJ disregarded this evidence is simply untrue.

Plaintiff next asserts that the ALJ erred by failing to develop the basis of Dr. Castle's conclusion, contained in one of his reports, that Plaintiff is likely disabled. The Court finds this argument similarly baseless. Although it is well-established

6

that the ALJ is required to "develop a 'full and fair' record before determining a claimant is not disabled," this obligation is not limitless, and courts generally "respect[] the ALJ's 'reasoned judgment' on 'how much evidence to gather.'" *Thomas v. Colvin,* 745 F.3d 802, 807 (7th Cir. 2014). After reviewing Dr. Castle's report, the Court finds no error in the ALJ's development of the record.

Nothing in the record indicates that Dr. Castle is familiar with Social Security disability law. Moreover, Dr. Castle only spent thirty-three minutes with Plaintiff before making his report, and the report contains no explanation of what jobs Plaintiff could or could not perform as a result of her disability. (*See* R. 343.) Thus, Dr. Castle's opinion regarding Plaintiff's disability status is deserving of little weight, much less a thorough factual investigation into its bases. Furthermore, the report does not contain, and Plaintiff has not pointed to, any observations of Plaintiff's impairments that were not accounted for in the ALJ's opinion. (*Compare* R. 23-27, *with* R. 342-43). Therefore, even if the ALJ failed to develop the record in this regard, which he did not, that error would have been harmless.

***2. The ALJ Properly Discounted the Opinions of Plaintiff's Treating Physicians***

Plaintiff next argues that the ALJ erred by declining to give controlling weight to Plaintiff's treating physicians, in violation of 20 C.F.R. § 404.1527. Section 404.1527 requires the ALJ to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. Section 404.1527 further

provides that if the ALJ does not give the treating physician's opinion controlling weight, then he must weigh that opinion in light of the following factors:

1) the length of the treatment relationship and frequency of examination
2) the nature and extent of the treatment relationship
3) the amount/qualify of evidence support the physician's opinion
4) the consistency of the physician's opinion with the record as a whole
5) the physician's expertise in area on which she opines
6) other factors brought to the Commissioner's attention

20 C.F.R. § 404.1527(c)(1)-(6); *accord Campbell*, 627 F.3d at 308.

In that respect, Plaintiff claims that the ALJ committed reversible error by (1) failing to consider the above factors and (2) failing to explain his reasons for discrediting Plaintiff's physicians according to those factors. Plaintiff is mistaken. The ALJ's opinion clearly shows that the ALJ considered the above factors. (*See* R. at 26-27.) Thus, Plaintiffs first argument fails. Concerning Plaintiff's second argument, while the ALJ was required to *consider* the above factors, he was not required to write a factor-by-factor analysis in his opinion. Rather, the ALJ was only required to "minimally articulate" his reasons for discounting plaintiff's physicians. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Accordingly, Plaintiff's argument fails in this respect as well.

Here, the ALJ indeed "minimally articulated" his reasons for discrediting Plaintiff's treating physicians. Although Plaintiff does not specify which of her treating physicians the ALJ (allegedly) improperly discredited, the Court will

nonetheless assess the sufficiency of the ALJ's reasoning with respect to Dr. Procento, Dr. Castle, Dr. Saikh, and Dr. Cavanaugh.[3]

      (a) Dr. Procento's opinion

Dr. Procento has been Plaintiff's physician since 2003. In 2010, he completed a Stroke Residual Functional Capacity Questionnaire in 2010, in which he noted that Plaintiff suffered from the following symptoms: weakness, slight paralysis, unstable walking, numbness, tingling, pain, and fatigue. (R. 576-81.) Dr. Procento further opined that Plaintiff's pain and fatigue were great enough to interfere constantly with her attention and concentration, and that she would likely be absent more than four days per month due to her impairments and treatment needs. (*Id.*)

In his opinion, the ALJ discussed Dr. Procento's findings and explained that they were not entitled to controlling weight because: (1) Dr. Procento provided little explanation for his conclusions in his reports; (2) his opinion is inconsistent with other evidence in the record; (3) the 2010 report was prepared after only six visits with Plaintiff; and (4) the 2010 report did not assess Plaintiff's limitations in standing, walking, sitting, carrying, upper extremity use, postural activities, restrictions in her work environment, or her need for breaks and leg elevation. (R.

---

[3] In her reply brief, Plaintiff also argues that the ALJ erred by ignoring the opinion of Plaintiff's consultative examiner, Dr. Weiss. According to Plaintiff, the ALJ should have considered Dr. Weiss's opinion as expert opinion evidence, pursuant to SSR 96-6p. However, contrary to Plaintiff's assertions, Dr. Weiss found Plaintiff to be *less* restricted than the ALJ did. (*See* R. 441-48.) The ALJ disagreed and explained that "the record as a whole supports more restrictions on the claimant's functional limitations [than Dr. Weiss reported]." (R. 27-28.) Thus, Plaintiff's argument is both self-defeating and unsupported by the record.

27.) These are precisely the sort of "minimal articulations" contemplated by the Seventh Circuit, and, therefore, the Court affirms the ALJ's decision in this regard. *See Elder,* 529 F.3d at 415.

(b) Dr. Castle's Opinion

Dr. Castle diagnosed Plaintiff with minimal degenerative joint disease, a limp, postural issues, and chronic pain. (R. 342-47.) In his report, Dr. Castle further stated:

> I also think that the patient . . . is fairly certain that she will not be able to work because of this limp and I think that is not unreasonable. I told her that if physical therapy felt that she needed a cane, and an AFO brace, that she likely could not work. It seems as if, even given the limp itself and some of this history of falls that she has, that she probably would be a good candidate for disability at this point.

(R. 342-43.) In discounting Dr. Castle's opinion, the ALJ explained that "[a]lthough Dr. Castle is a neurologist, he rendered his opinion after only two visits with the claimant." (R. 27.) The ALJ then explained that Dr. Castle's conclusion regarding Plaintiff's disability is entitled to little weight because Dr. Castle is unfamiliar with disability law. (*Id.*) Again, these are sufficient "minimal articulations" to justify discrediting Dr. Castle's opinion, and the Court therefore affirms that decision. *See Elder,* 529 F.3d at 415; *see also Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir. 2001) ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' . . . . The Commissioner, not a doctor selected by a patient . . . decides whether a claimant is disabled."); 20 C.F.R. § 404.1527(d) (medical source opinions concerning disability are "not medical

opinions . . . but are, instead, opinions on issues reserved to the [judgment of] Commissioner.").

(c) Dr. Saikh's Opinion

Dr. Saikh diagnosed Plaintiff with impaired lower extremity sensation, lumbar pain, an externally rotated right leg, lateral left knee pain, and left knee babinski and crepitance, and observed that Plaintiff's lower left extremity would spasm when standing. (R. 363.) He also recommended that Plaintiff begin physical therapy, increase her fluid intake, take a multivitamin regularly, and take Tylenol for her pain. (*Id.*)

In his opinion, while the ALJ did explicate Dr. Saikh's findings, (*see* R. 25), he did not provide any basis for discounting Dr. Saikh's opinion. However, contrary to Plaintiff's insistence, this was not an error on the ALJ's part — Dr. Saikh simply did not opine on Plaintiff's functional capacity. Rather, Dr. Saikh merely observed essentially the same symptoms as Plaintiff's other doctors and recommended further testing and treatment. Thus, Dr. Saikh essentially presented no "opinion" for the ALJ to discount, and therefore the Court finds no error in the ALJ's lack of discussion regarding the weight given to Dr. Saikh's opinion.

(d) Dr. Cavanaugh's Opinion

Lastly, although Plaintiff correctly notes that the ALJ did not discuss Dr. Cavanaugh's opinion whatsoever, this is because Plaintiff saw Dr. Cavanaugh one month after the ALJ issued his decision. (*See* R. 30, 593.) Thus, it strains credulity to hold that the ALJ erred by failing to address Dr. Cavanaugh's opinion.

Nonetheless, the Court will construe Plaintiff's argument to mean that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of Dr. Cavanaugh's report.

To merit a "sentence six" remand, a claimant must show that "there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). Evidence is "material" if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). The Court finds it unlikely that the ALJ or the Commissioner would have reached a different decision had they been aware of Dr. Cavanaugh's report.

Dr. Cavanaugh diagnosed Plaintiff with slight weakness in her left upper extremity, lower left side weakness, mild degenerative joint disease, arthritic pain,[4] a left foot drop, a limp, and noted that without a brace, Plaintiff's left knee hyperextends when standing. (R. 593-94.) All of these conditions were accounted for in the ALJ's opinion. (*See* R. 26-27.) Accordingly, as Dr. Cavanaugh's report does not contain any new material evidence, the Court declines to remand this case on the basis that the report should be part of the record.

### 3. *The ALJ Properly Discredited Plaintiff's Subjective Reports of Pain*

---

[4] Plaintiff mistakenly claims in her brief that Dr. Cavanaugh diagnosed plaintiff with "rigid ankle/foot arthrosis" and found that it caused "her to fall . . . when her left leg buckled getting out of the shower." (Pl.'s Reply Br. at 4.) Although Dr. Cavanaugh's report indicates that Plaintiff's pain is arthritic in nature, it does not attribute a causal relationship to Plaintiff's arthritis, nor does it attempt to explain her alleged susceptibility to falling. (*See* R. 592-96.)

12

Next, Plaintiff takes issue with the ALJ's credibility determination regarding her claims of disabling pain and functional limitations. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

Here, Plaintiff argues (without citing to the record) that the medical evidence in this case shows that she suffers from various anatomical and physiological abnormalities, and therefore the ALJ's skepticism of her pain was unreasonable. The Court disagrees. While an ALJ may not disregard a claimant's subjective complaints of pain simply because it is inconsistent with other evidence, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005), that is not the case here. The ALJ did not dispute that Plaintiff suffered pain and discomfort as a result of her stroke; rather, he simply did not believe that it limited her functioning to the extent she claimed.

To support his findings, the ALJ highlighted numerous inconsistencies between Plaintiff's alleged pain/limitations, her daily activities, and the record. First, the ALJ noted that although Plaintiff claims that she has been functionally limited since her stroke in 2000, she did not stop working until her company laid her off in February 2009. (R. 26, 41.) The ALJ thus found Plaintiff's claims of

13

disabling pain less credible, since she worked for nine years after her stroke and only stopped working because of circumstance, rather than because of her disability. This is a permissible negative inference. *See Lott v. Astrue*, No. 11 CV 5632, 2012 U.S. Dist. LEXIS 170003, at *27-28 (N.D. Ill. Nov. 30, 2012) (affirming ALJ's decision to discredit the plaintiff's complaints of pain where the plaintiff alleged a disability onset date that coincided with his being laid off).

In addition, the ALJ explained that "Plaintiff's treatment has been rather conservative" compared to her alleged disabling pain. (R. 27.) Plaintiff maintains that this is untrue, and that given her persistent efforts to seek treatment, the ALJ should have found her to be more credible, pursuant to SSR 96-7p. Plaintiff is mistaken. The record reveals nothing special about Plaintiff's course of treatment: she was not taking strong pain medication, she was not a candidate for surgery, and, most importantly, she did not diligently pursue treatment. (R. 27.) Thus, although SSR 96-7p suggests that a claimant's efforts in seeking treatment should boost her credibility, the record does not show that Plaintiff made such efforts. To the contrary, the record shows that Plaintiff stopped going to physical therapy after only two sessions, that she missed a number of doctors' appointments, and that she often declined to follow treatment prescriptions, such as pain medication, wearing a brace, using a cane, or light exercise. (*See* R. 24, 26-27; 50-52; 332-347; 563-80.) Although Plaintiff makes much of the numerous physicians she has seen, the number of physicians a claimant sees, by itself, is not probative of whether the claimant has diligently pursued treatment.

Of course, the Court is mindful that an ALJ must explore a claimant's reasons for not seeking or pursuing treatment before drawing a negative inference, *Shauger v. Astrue*, 675 F.3d 675, 696 (2012), which the ALJ did not do in his opinion. However, the ALJ explored this issue at the hearing, and Plaintiff explained that she stopped pursuing treatment because she felt it was not working.[5] (*See* R. 50-52.) That the ALJ failed to articulate this in his opinion is hardly an error worthy of remand, especially considering that Plaintiff unilaterally concluded her treatment was not working without actually following the treatment plans prescribed by her physicians. The Court therefore finds no error in this regard. *See McKinzey v. Astrue*, 641 F.3d 884, 893-94 (explaining that minor articulation errors are insufficient to warrant remand so long as the ALJ's opinion is ultimately supported with valid reasons); *Smith v. Astrue*, No. 09-CV-2392, 2010 WL 3526655, at *15 (N.D. Ill. Sept. 1, 2010) (holding that a claimant's "sporadic treatment" was sufficient to justify an adverse credibility finding).

Lastly, the ALJ discredited Plaintiff's allegations of pain because he found that they were inconsistent with her daily activities, such as grocery shopping, driving to church, and housework. (R. 27.) Plaintiff argues that this was improper because household chores do not equate to competitive employment. While the Court agrees with Plaintiff on the distinction between daily activities and the workplace, Plaintiff mischaracterizes the issue. The ALJ did not equate Plaintiff's ability to do housework with her ability to work. Rather, the ALJ considered how

---

[5] Plaintiff also claimed at the hearing that she stopped treatment because her doctors told her that it would be futile, but the Court finds no support for this claim in the record.

15

Plaintiff's daily activities reflect on her allegations of disabling pain and concluded that they were inconsistent. Ultimately, Plaintiff merely invites the Court to reweigh the evidence and come to a different conclusion than the ALJ, which the Court cannot do. *See Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008). Therefore, as Plaintiff has not demonstrated that the ALJ's credibility determination was "patently wrong," the Court affirms that determination.

### 4. *A Consultative Examiner was not Required at the ALJ Hearing*

Plaintiff next argues that this case should be remanded because the ALJ should have had a medical consultant at the hearing to comment on the findings of the consultative examiner and the VE, pursuant to SSR 96-6p. Plaintiff is mistaken. Nothing in SSR-96-6p requires that a medical expert testify at an ALJ hearing, and therefore Plaintiff's argument fails.

### 5. *The VE's Hypothetical*

The VE found that a person with Plaintiff's work history and RFC could perform her past relevant work as a factory assembly worker at the sedentary level, at both an unskilled and semi-skilled level. (R. 28.) Without citing to any medical record, Plaintiff argues that the VE's hypothetical failed to account for the findings of Plaintiff's treating physicians, which indicate that Plaintiff is more functionally limited than the ALJ found her to be. In addition, Plaintiff points to an apparent inconsistency in the VE's hypothetical: whereas the Dictionary of Occupational Titles ("DOT") provides that sedentary work requires no more than two hours of

standing in a work day, the VE's hypothetical was based on standing for one third of the day.

Plaintiff's first argument is merely another attempt at challenging the weight given to Plaintiff's treating physicians. The Court has already considered and rejected this argument. Concerning Plaintiff's second argument, while it is true that the VE initially framed his hypothetical to include standing for one third of the day, the ALJ caught that mistake and asked the VE to reformulate the hypothetical to account for only two hours of standing in a day, (R. 68), which is consistent with the DOT's definition of sedentary work. Thus, the VE's error was harmless. *See McKinzey*, 641 F.3d at 892.

**B.     The ALJ's Step Five Determination**

Lastly, Plaintiff challenges the VE's assertion that, in addition to her past relevant work, Plaintiff is fit to work other jobs that exist in substantial numbers throughout the national economy. The Court finds this argument moot because the ALJ determined that Plaintiff is not disabled at Step Four, and the Court has found no error in that determination. Accordingly, the Court declines to address Plaintiff's contentions in this respect.

**CONCLUSION**

For the reasons set forth above, the Court denies Plaintiff's Motion for Summary Judgment [Doc. No. 23] and grants the Commissioner's Cross-Motion for Summary Judgment [Doc. No. 26].

**SO ORDERED.**   **ENTERED:**

**DATE: November 20, 2014**   _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**